Good morning. May it please the Court, my name is Linda Bell and I'm Assistant Federal Public Defender for the District of Nevada and I represent Edward Phelps. I would like to reserve one minute for rebuttal. This case involves a facial challenge to the Nevada Deadly Weapon Enhancement Statute as being unconstitutionally vague. The statute fails to provide fair notice of prohibited conduct and it also allows for arbitrary enforcement. Prior to 1995, there was no statutory definition for deadly weapon. In 1995, the statute, 193.165, was amended to add a definition that included three parts. The first, known as the inherently dangerous test, provided any instrument which, if used in the ordinary manner contemplated by its design and construction, is likely to cause substantially bodily harm or death. The second, which is the primary focus of my argument today, provides any weapon, device, instrument, material or substance which, under the circumstances in which it is used, attempted to be used or threatened to be used, is readily capable of causing substantial bodily harm. And the third, it provides a laundry list of dangerous weapons. It refers to other statutes that talk about knives and brass knuckles and things like that. The test for looking at the statute is facial validity. A criminal law that contains no mens rea element and is permeated with vagueness should be examined for facial validity under court cases City of Chicago v. Morales and the U.S. Supreme Court case of Cullauty v. Franklin. Where a statute criminalizes any conduct, the law may not be permissibly vague in any of its applications this Court has found in Forbes v. Napolitano. There are two tests for facial validity, and the first is whether the statute fails to provide notice to the ordinary person. So can somebody figure out what conduct is prohibited from the statute? And the second is whether it authorizes or encourages arbitrary enforcement. That element alone is enough to invalidate the statute. In this ---- Kagan. What is ---- How different is this statute from other statutes in other States? Your Honor, there are other jurisdictions that have similar statutes, although I would note for whatever reason that the statutes tend to call, make some distinction between deadly weapon and dangerous weapon, and the language used in subsection B is typically the language used in the dangerous weapon part of the statute. But I was unable to find any Federal case where the validity of these, any of these statutes for under a vagueness analysis has been done. Are you suggesting that what we would have to have is a list of the potential weapons? Certainly that would be clearer and make it a really bright-line test, but I'm not sure that that's necessary. Would the weapon which your client, Acosta, originally attacked the victim, would that have passed this test? I'm not sure that it would, Your Honor. When we look at the purpose of a deadly weapon enhancement, the point is to deter the use of deadly weapons, people carrying weapons around. A trash compactor is not something that is easily ---- Well, I'm not talking about the trash compactor. I'm talking about the weapon he first attacked the victim with. My understanding of the record is he attempted to choke him to death. Oh, with the twine. That was never charged. I understand that. But would the twine have been sufficient to be a deadly weapon? Under the Nevada statute as it stands now, probably there are cases. I know that Kate has a case where they used a cord from a mini-blinds. Okay. If it was a hauser instead of twine, would it still be a deadly weapon? If it was a what? I'm sorry, Your Honor? A hauser. Rope about that fat. Well, Your Honor, under this statute, I think that's the problem with the statute. Under the statute, anything is a deadly weapon. There's no way for an ordinary person to determine what is a deadly weapon. The things that we would commonly think of as a deadly weapon fall under the statute, but so do a whole bunch of other things, including ropes and water and safety pins and Xanax. The list is limitless. Just probably just about anything in this courtroom could be a deadly weapon the way that the Nevada statute currently stands. Counsel, our standard of review in this case is governed by AEDPA, correct? That's correct. What Supreme Court case holds in your favor that would tell us that the Nevada court acted unreasonably in applying federal law? Your Honor, Colander and City of Morales both set forth the test that you look at the facial validity of the statute. In this case, the Nevada Supreme Court did not do that. They looked at the statute on an as-applied basis. What's really interesting is a couple years after they look at this case, they actually clarify that that wasn't the correct standard. In the case of City of Las Vegas v. the 8th Judicial District Court in 2000, the Nevada Supreme Court says that Colander and Morales is the proper standard to look at the facial validity of the statute. Well, let me make sure that I understand this again. This statute, there are other statutes that are similar to this. That's correct. That's a dangerous weapon. We've all seen them. The result of your research is that you've never seen a case in which they were challenged for facial invalidity. I could not find a Federal case where they had been challenged for, facially, for validity. Does that tell us something? That nobody's challenged them for facial validity. Do these raise a serious question about what they mean? And it may be, Your Honor, because in those jurisdictions, they don't overreach the way that Nevada has been with the statute. What is the overreaching? Charging items that an ordinary person would not believe to be a deadly weapon. And that's the problem. The statute allows arbitrary enforcement. Well, I want to focus you on the specific wording of the statute because it doesn't simply say that something has to have caused death, but it has to be readily capable of causing substantial bodily harm or death. So doesn't that kind of limit things that people could figure out that something is, you know, substantially likely to kill someone? Unfortunately, no, Your Honor. The way that you actually find out if something is a deadly weapon is if you actually killed somebody and then it's a deadly weapon, we sort of look at it in the reverse, which is something that City of Chicago v. Morales said we can't do. You can't look at the accident. You don't think that if someone thought about it ahead of time, they would know that stuffing somebody into a giant trash compactor and smushing them, you don't think they would know ahead of time that that's readily capable of killing them? It's possible, although the facts in this case suggest that Mr. Phelps actually thought the gentleman was already deceased when he put him in the trash compactor. If I could... Does that absolve him? I already killed him, so the fact that he's... I don't see that. If I may reserve my remaining time for rebuttal, thank you. Thank you. Good morning. May it please the Court, my name is Vic Schulze. I'm a Senior Deputy Attorney General for the State of Nevada. I'd like to point out one functional weakness in the opening brief, and that is that Mr. Phelps is only focusing on half of the appropriate analysis here and he's ignoring the other half of the analysis. The basic argument is there are simply too many items out there that can potentially constitute deadly weapons and, therefore, the statute's fake. The problem with that argument is, I think, best addressed on page 21 of our brief in this case from the Eighth Circuit, United States v. Moore, where we've got a long quote, but the Eighth Circuit held the same thing the Nevada Supreme Court held, same thing all courts have always held under the functional test, and that is the item is only part of the issue. The primary issue is under the use test, under the functional test, how the perpetrator uses the item. It's the use in my, I would argue to you, that creates the potential for danger. Eighth Circuit said in short, what constitutes a dangerous weapon depends not on the nature of its use to inflict, to endanger life or inflict great bodily harm. In the Federal Criminal Code, under Section 111, we cited a bunch of items in our answering brief that Federal appellate courts have found to be dangerous or deadly weapons under the Federal Assault Statute, including a walking stick, a Cadillac car, shoes, essentially anything that has the potential when used correctly to inflict death or substantial bodily injury. I would point out one thing. I think your Federal statute might be broader than our State statute in Nevada. We cite a case in here from the, I think it's the Seventh Circuit or the Eighth Circuit, where a mouth was a dangerous or deadly weapon under the Federal statute. Now, I would concede that under Nevada's statute, probably a mouth would not constitute a deadly weapon because I don't see a, I think, to be a deadly weapon under Nevada law, and we don't have a decision on this. So to a certain extent, I'm, my remarks might be a little bit early because our Supreme Court hasn't ruled on this, but I'm going to guess that under Nevada law, the deadly weapon has to be external to somebody's body, and so I think I would argue under that case that Federal law in allowing a mouth and, I don't know, germs, I guess, under that decision apparently human bites are supposed to be worse than dog bites according to the Federal appellate court, I'd suggest that there are more items under the Federal statute. The Federal statute is broader, partially because the Federal statute does not have a statutory definition of what a deadly weapon is. An overturned desk at that Alabama to be a deadly or dangerous weapon. Walking stick used to beat the letter carrier in Chicago. The Cadillac from a fairly early case. A Cadillac, we don't have any windows in this courtroom looking outside, some of the other courtrooms do, and there are probably Cadillacs driving by right now. The Cadillac driving down 7th Street or driving down Mission Street as it's being used is not a deadly weapon. If one of those guys uses that Cadillac to run over his brother-in-law who owes him some money, now that Cadillac under the Federal statute becomes a dangerous or deadly weapon. I think there's – I think Judge Schroeder was absolutely correct in the question, why are there no cases anywhere either holding or even dealing with the issue whether or not deadly weapons, deadly weapon enhancements are vague. And that's because, to my knowledge, no deadly weapon statute coast-to-coast, from Delaware to Alaska, we've cited a lot of those States, has ever been found to be vague. And the problem here is I think perhaps that Mr. Phelps can't see the breadth of a statute, and this probably is one of the fatalities of his argument, the breadth of a statute, or the fact that a statute raises a factual issue for a trier of fact like the jury does not make that statute vague. Justice Marshall in the Granite case, that case from the – out of the Seventh Circuit, U.S. Supreme It just doesn't work when we use language. The ---- Kagan. I think this is sort of curious. It's kind of you grow up the legend that a prizefighter's fist is a deadly weapon. Under this definition, is that – would that meet it? I think it's – I think it's ---- I think it's a great question, and I'm speculating, and I want the record to reflect that, because we don't have law on prizefighters or, you know, I don't know, taekwondo experts, black belts in karate, from our – from the Nevada Supreme Court. I'm going to guess, though, that a prosecutor would not have a lot of success arguing that a body part is a deadly weapon. Under this statute. Under Nevada's statute. And under the Federal statute, apparently it might be, because of that mouth case from Minnesota's in the Eighth Circuit, must have been out of the Eighth Circuit. But I don't – I think you'd have a hard time arguing that a body part, even with training, a boxer, for example, or somebody in martial arts, I think it has to be external to your body. Now, the question arises, how do you kill somebody without using a deadly weapon? Is that a possibility in Nevada? And the answer, of course, is yes. The best example of that in our state is the infamous crime 10 years ago when Jeremy Strohmeyer manually strangled and sexually assaulted Sharice Iverson at the casino right over the state line on Interstate 15, coming into Nevada from Los Angeles, in Primm, Nevada. That little area with all the casinos that suddenly arise out of the desert by that dry lake bed that used to be called State Line. Jeremy Strohmeyer, the 19-year-old kid from Long Beach, manually, after a game of hide-and-seek, followed Sharice Iverson into the casino restroom, sexually assaulted her, manually strangled her, and then killed her by twisting her neck, by breaking her neck, because he was afraid she'd be a witness against him. That's an excellent example of how you kill somebody in Nevada without using a deadly weapon, under my argument that his hands would not have been a deadly weapon. I think he has to be. He wasn't charged under the statute, was he? He was not charged with the — my recollection is he was charged with kidnapping, sexual assault, and murder. I do not believe he was charged with murder with the use of a deadly weapon. He ended up pleading to — ended up pleading to, I think, one or two lessors to get off of death row. I think he got life. Our statute, I think, in conclusion, no different than any of the other statutes nationwide, the argument that because it's a factual issue, the Nevada Supreme Court has said, well, you know, if it's not inherently dangerous, we give the issue to the jury. In the 1879 case out of Virginia City, where the one guy is beaten in the gambling salon, beating the other guy with a wagon wheel spoke, and that was — the deadly weapon under that case, that Davis case. Sometimes the use of the item and the potentiality for inflicting substantial bodily injury or death is a jury issue. And I think that Phelps is absolutely wrong. I think he's dead wrong when he argues that the fact that it is a jury question sometimes somehow makes the statute vague. That simply condemns the role of fact-finding in the criminal system. And I think that argument simply goes nowhere. The bottom line is, because we're not dealing with a First Amendment issue, this Court said in Hogue, citing Missouri and a couple other U.S. Supreme Court cases, that when expressive conduct is not involved, we do an as-applied analysis, which is exactly what the Nevada Supreme Court did. They did the right thing under 2254d. Under an as-applied standard, applied to the merits of this case, nobody, nobody on earth is going to place a live body, and the Nevada Supreme Court found in the direct appeal that there was enough evidence to show that that body was alive when it was crushed. Nobody is going to believe that you place a living body in a commercial trash compactor. I think we have your point. Thank you. I just have two brief points. I think that the warden's argument illustrates the problem with the statute. If we have to guess whether hands or a mouth would be a deadly weapon under the statute, then ordinary people do not have notice. The other thing is that with respect to the trash compactor, two judges in Nevada actually found that it was not a deadly weapon. And the justice of the peace and the trial judge were disinclined to allow the prosecutor to proceed with the charge. The prosecutor had to go to the grand jury. When it did go through post-conviction, then the district court judge, she felt that it was a deadly weapon, but said that she believed that the statute was vague and doing a facial analysis, which the Nevada Supreme Court did not do. Thank you. Thank you. The case just argued is submitted for decision.
judges: Schroeder, Graber, Duffy